**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 05-1126-PHX-DGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Kevin D. O'Rourke, | ) | |
| Defendant. | ) | |

Defendant Kevin O'Rourke is charged with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256, receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2256, and transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1), (b)(1), and 2256. Dkt. #80. The Government also charged Defendant with distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(3), but has since withdrawn that charge. Dkt. ##1, 80.

Defendant has filed three motions to dismiss, one motion to strike, and seven discovery motions. The Court held an evidentiary hearing on November 14, 2006, and has reviewed memoranda and other materials filed by the parties before and after the hearing. Dkt. ##41-49, 50, 62, 63, 66-68, 70-74, 76, 85, 88, 90-92. For the reasons stated below, the Court will deny Defendant's motions.

## I.     Background.

Defendant O'Rourke came to the attention of the FBI on January 3, 2005, when Special Agent Robin Andrews conducted an undercover investigation of people involved in the possession and distribution of child pornography. Dkt. #66 at 1. Conducting a search through the peer-to-peer Internet file sharing software known as "Limewire," Agent Andrews downloaded images of child pornography from Defendant's computer. *Id.* The FBI was able to identify Defendant through his Internet Protocol address and a subpoena of his Internet Service Provider, and subsequently obtained a search warrant for Defendant's home and computer. *Id.* at 2. The search warrant was executed on February 22, 2005, and Defendant's computer was found to contain 46 movie files and several hundred still images of child pornography. *Id.* at 3; Dkt. #16 at 3. The Government alleges that these movies and images were saved on Defendant's hard drive and were available to be downloaded over the Internet by others using Limewire software. Dkt. #66 at 2-3.

The Government seized Defendant's computer and presented evidence to a federal grand jury. The grand jury indicted Defendant on October 26, 2005, and later issued a superseding indictment. Dkt. ##1, 80. On January 12, 2006, the Court denied Defendant's request for pre-trial release from custody. Dkt. #23.

Defendant now seeks to obtain from the Government a copy of his computer hard drive containing the alleged child pornography. Defendant asserts that experts and attorneys reviewing the hard drive might be able to construct viable defenses to the charges that he knowingly obtained and distributed child pornography. Analysis of images on the hard drive might also raise questions about whether the images are of actual children, a requirement for successful prosecution under child pornography statutes after *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).

Although a criminal defendant normally may obtain from the Government evidence seized from the defendant or to be used at trial against him, Fed. R. Crim. P. 16(a)(1)(E), Congress recently established different rules for child pornography cases. On July 27, 2006, President Bush signed into law H.R. 4472, known as the Adam Walsh Child Protection and

Safety Act of 2006 (the "Walsh Act"). The Walsh Act prohibits the Government from releasing child pornography to defendants charged with child pornography offenses so long as the Government makes the evidence reasonably available for inspection and examination by the defendant's lawyers and experts at a Government facility. 18 U.S.C. § 3509(m).

In light of this new statute, the Government has declined to provide Defendant O'Rourke with a copy of the computer hard drive seized from his home. The Government instead has made copies of the hard drive available for inspection and examination at a Government facility.

Defendant's motions raise a number of issues. He argues that, under a correct interpretation of the Walsh Act, his attorneys are entitled to possession and control of the hard drive. If the Court disagrees and holds that access may be limited to Government facilities, Defendant contends that the statute violates his Fifth Amendment right to due process of law. Relying on the Supreme Court's decision in *Ashcroft*, Defendant also argues that the criminal statutes under which he is charged are unconstitutionally vague and overbroad.

The Court will first address Defendant's statutory and constitutional arguments concerning the Walsh Act, as well as his motions to compel production of the hard drive. The Court then will address Defendant's overbreadth and vagueness challenges.

**II.     Defendant's Statutory and Constitutional Arguments.**

The relevant portions of the Walsh Act read as follows:

> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.
>
> (B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and

- 3 -

>any individual the defendant may seek to qualify to furnish expert testimony at trial.

18 U.S.C. § 3509(m).

### A.     Officer of the Court.

Defendant argues that his lawyer is an "officer of the court" and therefore may possess and control any child pornography that the statute restricts to "the court." *See* 18 U.S.C. § 3509(m)(1); Dkt. #70 at 3-4. The statute specifically provides, however, that the child pornography shall remain in the possession and control of "the Government or the court" so long as the defendant and "his or her attorney" and experts are given ample opportunity to inspect and examine it at a Government facility. 18 U.S.C. § 3509(m)(1), (2)(B). The statute thus distinguishes between a "court" and an "attorney." The statute also clearly provides that defense attorneys are to be given access at Government facilities. Defendant's reading – that defense attorneys as officers of the court are to be given independent possession and control of the material – is contrary to the statute's plain language. Defendant has provided no support for his reading of the statute and in fact retreated from this argument at the November 14 hearing.

### B.     Federal Rule of Criminal Procedure 16.

Defendant argues that the statute contradicts Federal Rule of Criminal Procedure 16, implying that such a contradiction somehow renders the statute invalid. Dkt. #70 at 5. But Congress has power to override the Federal Rules of Criminal Procedure. *See, e.g.*, *United States v. Mitchell*, 397 F. Supp. 166, 170 (D.D.C. 1974), *aff'd*, 559 F.2d 31 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 933 (1977). Congress' intent to do so in the Walsh Act is clear. The statute's restriction on a defense team's right to obtain possession of child pornography is imposed "[n]otwithstanding Rule 16 of the Federal Rules of Criminal Procedure." 18 U.S.C.

§ 3509(m)(2)(A). Given this clear statutory override of Rule 16, Defendant gains no ground by arguing that the hard drive in this case should be produced under the rule.[1]

### C.     Due Process.

Defendant's primary challenge to the statute is based on the Due Process Clause of the Fifth Amendment.[2]  Defendant argues that denying his attorneys and experts possession of the hard drive is fundamentally unfair and severely prejudices his ability to obtain a fair trial.  Defendant appears to argue that § 3509(m) violates due process both facially and as applied to him.  *See* Dkt. #70 at 6-12.  Other courts have held that the statute does not violate due process.  *See United States v. Johnson*, 456 F.Supp.2d 1016, 1019-20 (N.D. Iowa 2006)*; United States v. Butts*, No. CR-05-1127, 2006 WL 3613364, at *2 (D. Ariz. Dec. 6, 2006).

The requirements of due process can be stated in general terms.  "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve."

---

[1] The Government argues that the Court need not construe § 3509(m) or address its constitutionality if the Court otherwise would deny possession of the hard drive under Rule 16.  The Court concludes, however, that it would grant the defense team possession of the hard drive in the absence of the statute.  Rule 16(a)(1)(E) provides that a defendant may inspect or copy evidence from the Government that is material to preparation of the defense, will be used in the Government's case-in-chief, or was obtained from the defendant. The hard drive falls within all three categories of discoverable information.

[2] Defendant also argues that the statute violates his presumption of innocence.  Dkt. #70 at 4-5.  Defense counsel agreed at the November 14 hearing, however, that this is simply another formulation of Defendant's due process argument.  Defendant alternatively claims, as does the amicus brief submitted in his favor, that § 3509(m) denies his right to a fair trial under the Sixth Amendment.  Dkt. #76 at 2-3, Ex. B.  As the amicus brief notes, however, Defendant's concerns are better addressed under the framework of due process, which supplies broader protections than the Sixth Amendment.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (discussing due process in the context of the Fourteenth Amendment). The Court accordingly will address Defendant's trial fairness claims under the framework of due process.

*Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (internal quotations omitted). In some cases, this includes the right to present evidence through expert witnesses. *See, e.g., Ake. v. Oklahoma*, 470 U.S. 68, 83 (1985). "Due process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (internal quotations omitted).

The Court concludes that the statute, properly construed, comports with due process. The statute's denial of a defense team's possession of alleged child pornography is not absolute. Subsection (2)(A) requires that a defendant be denied possession only "so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m). Subsection (2)(B) defines "reasonably available" to mean that "the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." *Id.* If the Government cannot satisfy these requirements – if it cannot make the alleged child pornography "reasonably available" to defense counsel and experts by providing them "ample opportunity" to inspect, view, and examine the material at a Government facility – then the statute does not require that the material be withheld. *Johnson*, 456 F.Supp.2d at 1019; 18 U.S.C. § 3509(m)(2)(A) ("a court shall deny [copying or possession] . . . *so long as* the Government makes the property or material reasonably available to the defendant" (emphasis added)). Counsel for the Government agreed with this interpretation of the statute at the November 14 hearing and in a post-hearing memorandum. Dkt. #88 at 4.

To answer Defendant's constitutional challenge, then, the Court must determine what is meant in the statute by "ample opportunity." If this phrase is coterminous with the requirements of due process – if the statute in effect requires the Government to give defendants the same access to material that due process requires – then the statute is not unconstitutional, either facially or as applied. It cannot be facially unconstitutional because

its terms square with the requirements of due process.[3] And it cannot be unconstitutional as applied because it will be applied, at least in this case, to require that Defendant receive such access to the evidence as due process demands.

Although the statute defines "reasonably available" to mean that a defendant must receive "ample opportunity for inspection, viewing, and examination at a Government facility," it does not define "ample opportunity." 18 U.S.C. § 3509(m)(2)(B). The parties have provided no insight into the meaning of this phrase and the Court has found none in the legislative history. Indeed, it appears that § 3509(m) was added to the Walsh Act without consideration in committee and with virtually no explanation in the legislative history. *See* 152 CONG. REC. H676 (daily ed. March 8, 2006) (statement of Rep. Conyers); 152 CONG. REC. H705-31 (daily ed. July 25, 2006).

To determine the meaning of "ample opportunity," the Court must look to the "'ordinary and natural' meaning" of the words. *Leocal v. Ashcroft*, 543 U.S. 1, 8-9 (2004) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)). Courts often "follow the common practice of consulting dictionary definitions to clarify" the "ordinary meaning" of statutory language. *United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 5930006*, 447 F.3d 686, 689 (9th Cir. 2006) (quotation omitted). The word "ample" means "generous or more than adequate in size, scope, or capacity." *See* WEBSTER'S NEW COLLEGIATE DICTIONARY 39 (1981). Thus, an "ample opportunity for inspection, viewing, and examination" would mean a more than adequate opportunity to inspect, view, and examine the evidence in question. Such an opportunity is akin to the due process requirement that a criminal defendant be afforded "fair opportunity to defend against the State's accusations" and be free from "arbitrary or disproportionate" restrictions on his right to confront witnesses and present evidence. *Chambers*, 410 U.S. at 294; *Lucas*, 500 U.S. at

---

[3]"A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). If § 3509(m) is construed to require the same access that due process requires, there is no set of circumstances under which it would be *invalid*.

151. The plain meaning of the statutory language thus appears to be consistent with the requirements of due process.

In addition, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the Court's] duty is to adopt the latter." *See Jones v. United States*, 529 U.S. 848, 857 (2000) (quotations omitted). Indeed, it is "incumbent on [courts] to read the statute to eliminate [serious constitutional] doubts so long as such a reading is not plainly contrary to the intent of Congress." *United States v. X-Citement Video, Inc.,* 513 U.S. 64, 78 (1994). Construing the Walsh Act to comport with due process – to require that a defendant be given such access at a Government facility as due process requires or, if such access cannot be given, that the defense team be given a copy of the material in question – is consistent with the ordinary meaning of "ample opportunity" and avoids serious constitutional concerns.

The Court accordingly construes § 3509(m) to mean that the Government must either give the defense team due-process-level access to the hard drive at a Government facility or must give the defense team a copy of the hard drive. So construed, the statute is not unconstitutional. Because Defendant contends that he is being denied such access in this case, the Court must address his motions to compel.[4]

### III. Has Defendant Been Afforded an Ample Opportunity to Inspect, View, and Examine the Evidence?

Before the hearing on Defendants' motions and at the Government's request, the Court entered a preliminary order governing examination of the hard drive in this case. Dkt. #69. Among other provisions, the order stated that the examination would occur at the

---

[4] Defendant's asserts a number of arguments about the unwisdom of § 3509(m). He argues that the statute is illogical, not founded on sound evidence, insults defense counsel, and treats defense attorneys differently than employees of the National Center for Missing and Exploited Children. Dkt. #70 at 8-10; Dkt. #85 at 9-10. Even if the Court were to agree with these criticisms, however, there is no prohibition in the Constitution on unwise legislation. These policy and prudential arguments must be directed to Congress, not the courts.

- 8 -

office of the United States Attorney at a mutually agreed upon date and time, that the Government must allow defense counsel and their experts to examine a copy of the hard drive in a private office, that the Government must ensure that the office is locked and that all persons are prohibited from entering the office without defense counsel or experts present (including during any times when defense counsel or experts leave computer equipment in the room), and that a copy of the Court's order must be posted on the door of the room. *Id*.

Counsel for the Government contacted defense attorneys and offered approximately 10 dates on which the defense examination could occur. The parties agreed on December 6 and 7, 2006. The Government agreed the experts could bring their own computers for the analysis, provided they agreed to delete any child pornography images from their computers upon completing their analysis. Computer forensic experts Sherri Lippus and Mark Vassel traveled to Phoenix to inspect the hard drive on December 6, 2006. The experts spent approximately 4.5 hours in the Government's office evaluating the hard drive. They did not return the following day. Dkt. #91, Ex. A.[5]

**A.     Two Alleged Problems.**

Defendant now claims that the conditions offered by the Government "made it virtually impossible for the Defendant's forensics experts to analyze the hard drive containing the images." Dkt. #90 at 3. He identifies two specific problems.

First, Defendant claims that the experts needed private access to the Internet to perform their analysis, that such private access was not available at the Government's office, and that the experts therefore were required to conduct much of their analysis using an Internet connection at their hotel. *Id*. Although it is true that the Government initially asserted that the experts could not have private access to the Internet over Government computers in the office, the Government subsequently informed defense counsel that the

---

[5]Defendant has filed a motion to strike supplemental facts submitted by the Government on January 4, 2007 regarding the Government's efforts to accommodate the experts. Dkt. #92. Because the supplemental memorandum filed by the Government contains no legal arguments and aids the Court in understanding relevant events in this case, the Court will deny Defendant's motion.

- 9 -

1    experts would be free to use their own private wireless Internet connections in the
2    Government's office. Dkt. #91, Ex. E. Defendant does not explain why this alternative was
3    unsatisfactory or why the experts declined to use it. Moreover, counsel for the Government
4    specifically invited the experts to suggest other alternatives for Internet access, including
5    arrangements that had been made at other Government offices, but received no response. *Id.*
6    at Ex. C. Based on this record, the Court cannot conclude that defense experts were denied
7    Internet access essential to their analysis of the hard drive.

8    Second, Defendant claims that the experts were provided with a copy of the hard drive
9    that contained "malware" and, as a result, were precluded from obtaining necessary
10   information from the hard drive. Dkt. #90 at 5. The Government asserts, however, that this
11   issue was never raised with the Government during the experts' visit. Dkt. #91. Indeed, the
12   Government asserts that it provided the hard drive copy in a standard format and never heard
13   of this problem until Defendant filed a reply memorandum with the Court on December 22,
14   2006. *Id.*

15   The Court cannot conclude that this problem has arisen from the fact that access to
16   the hard drive was limited to a Government facility. Defendant asserts that the malware
17   problem arose from the manner in which the hard drive was copied, and thus it appears the
18   problem would have arisen even if the Government had released the copy to be examined in
19   the experts' own offices. Nor does it appear that the problem is insurmountable. The
20   Government presumably can provide Defendant's experts access to a suitable copy of the
21   hard drive at the Government's office, provided the experts will work with the Government
22   in identifying precisely what is needed.

23   In sum, the two specific problems identified by Defendant do not amount to a denial
24   of due process or of an ample opportunity to inspect the hard drive. The problem appears to
25   be one of communication. Clearer communication should enable Defendant's experts to use
26   a wireless Internet connection at the Government's office and to obtain a copy of the hard
27   drive that does not include malware.

28

### B.     Potential Problems.

Defendant has asserted several additional problems that might arise in this case. The Court will address each briefly.

First, Defendant asserts that use of Government computers to perform the expert analysis would leave a roadmap to the experts' work product for the Government to review. This problem was solved when the experts were permitted to use their own computers.

Second, Defendant asserts that examination in a Government facility would hinder the ability of counsel, the experts, and Defendant to speak freely and openly about possible defense strategies. While this issue is complicated by the fact that Defendant is in custody, the Government has offered to make the hard drive available at the Marshall's office or another location where Defendant and his defense team can review the hard drive and confer privately.

Third, Defendant claims that because his attorney and experts are located in Ohio, examination of the evidence at a Government facility in Arizona is unduly costly. As noted above, however, the experts have made one trip to Arizona, during which they failed to avail themselves of all of the time offered by the Government. Defendant has provided no additional information concerning the cost of anticipated expert work. Moreover, as the Government notes, the hardship of out-of-state counsel traveling to Arizona to view evidence generally does not implicate due process concerns. Dkt. #68 at 8; *see Johnson*, 456 F.Supp.2d at 1020; *Butts*, 2006 WL 3613364, at *2.

Fourth, Defendant claims that his defense will be prejudiced by the inability of his counsel to have ready access to the hard drive while preparing for trial. The trial will occur in Arizona, and the Court believes reasonable arrangements can be made for defense counsel to review the evidence in an Arizona Government facility as often as is necessary to prepare for trial. While viewing the evidence at a Government facility may be less convenient than reviewing it in counsel's office or hotel room, Defendant has not shown that such inconvenience will deny Defendant "a fair opportunity to defend against the State's accusations." *Chambers*, 410 U.S. at 294.

Fifth, Defendant contends that the expert sign-in requirements at Government facilities will provide the Government with the identities of his experts and could result in the Government contacting those experts to learn about his defense. Government counsel has made clear, however, that she has no intention of contacting defense experts, and any concern about such possible contact could be addressed through a court order prohibiting it, if necessary. The Court also notes that Defendant had his experts contact Government counsel directly to arrange for the December inspection, suggesting that the identities of the defense experts is not secret.

Finally, Defendant has cited several cases in which courts have required the Government to provide defense counsel with copies of seized hard drives. Dkt. #70 at 6-7; s*ee United States v. Cadet*, 423 F.Supp.2d 1 (E.D.N.Y. 2006); *United States v. Aldeen*, No. CR-06-31, 2006 WL 752821 (E.D.N.Y March 22, 2006); *United States v. Hill*, 322 F.Supp.2d 1081 (C.D. Cal. 2004); *United States v. Frabizio*, 341 F.Supp.2d 47 (D. Mass. 2004); *United States v. Kirzhner*, No. 02-cr-38, slip op. (E.D.N.Y. June 14, 2002). These cases all pre-date the Walsh Act and involve a defendant's entitlement, under individualized facts, to evidence under Rule 16. The cases do not address the question presented here: whether Defendant has been afforded an "ample opportunity" to examine the hard drive within the meaning of § 3509(m).

**C.     Testimony from the Virginia Prosecution.**

Defendant has submitted to the Court transcripts of expert witness testimony from a different child pornography case. On November 6, 2006, Judge Robert E. Payne of the Eastern District of Virginia heard testimony from experts in computer forensics, digital imaging, and child pornography trial work. Dkt. ##77, 83. While the factual circumstances differ from this case, the parties have stipulated that the transcripts will become part of this record. *See* Dkt. #85 at 3. The Court accordingly has reviewed the transcripts.

The hearing involved the testimony of four witness: (1) Louis Sirkin, a criminal defense attorney, (2) Mark Vassel, a computer forensics expert, (3) Tom Owen, a digital video and audio forensics expert, and (4) James Griffin, also a digital video and audio

forensics expert. Dkt. ##77, 83. Of those four, Mark Vassel is the only expert who is currently involved in this case. While the Court finds the testimony of the other experts helpful in understanding the many potential issues that might arise under § 3509(m), the Court's decision must be based on issues that actually have arisen in this case.

Digital experts apparently examine the evidence for "indicators of falsification." Dkt. #85 at 5. They look for "morphing and layering, which are techniques that make it possible to make persons look younger than their actual age." *Id*. Additionally, they might conduct a frame-by-frame analysis to determine if the images have been manipulated. *Id*. at 5-6. These experts testified that having to conduct their analyses at a Government facility would be exceedingly difficult. Analysis of this type requires the use of several computers and other hardware devices, such as video playback decks, waveform monitors, audio spectrum analyzers, and high resolution computer monitors. *Id*. at 7. Transporting such fragile equipment would be very costly and would take several days of set-up and take-down. *Id*. The experts testified that the cost of their analysis at a Government facility would be up to four times the cost of conducting it at their own facilities. *Id*. Even if the Government provided them with the necessary equipment, it would be difficult to use because it would not be customized to their specifications. *Id*. at 7-8. Based on the difficulty of conducting analyses at a Government facility, the digital experts testified that they would likely decline involvement in such a case. *Id*.

Defendant's post-hearing reply brief states that "defense counsel intends to utilize digital experts in addition to the computer forensics experts already being used." Dkt. #90 at 7. It appears, however, that Defendant has not attempted to retain such an expert in this case. Until Defendant does, and presents case-specific evidence concerning the difficulties that might be encountered in this prosecution, the Court will not decide whether the "ample opportunity" standard can be satisfied by digital examination at a Government facility.

If Defendant does seek to retain a digital expert and asks the Court to address this issue, he should address the potential probative value of work by the digital expert. In a different context, the Supreme Court has stated that defendants asserting a due process

- 13 -

violation based on lack of access to witnesses must provide "some explanation of how their testimony would have been favorable and material." *Valenzuela-Bernal*, 458 U.S. at 872. The experts who testified at the Virginia hearing admitted they have never seen computer generated imagery that could be mistaken for a real human. Dkt. #88 at 6. Thus, the relevance of digital expert examination in this case may be limited. Defendant should address the relevance of such analysis if he retains a digital expert and seeks to demonstrate the need for the expert to obtain possession of the hard drive.[6]

### D. Conclusion.

The Court concludes that the Government has made genuine and reasonable attempts to provide the "ample opportunity" required by 18 U.S.C. § 3509(m)(2)(B). Defendant has not shown that an ample opportunity has been denied. Until Defendant makes such a showing, the Court will follow the requirements of § 3509(m) and withhold from Defendant a copy of the hard drive.

The Court is concerned about the pace of this case. Defendant was indicted more than one year ago and remains in custody. Trial is now scheduled for April 10, 2007. Dkt. #89. A routine status hearing will be held on March 26, 2007, at 1:30 p.m. The parties should confer before that date regarding any additional access to the hard drive required by defense counsel or experts. Disagreements should be raised with the Court before the status hearing. If Defendant seeks to show that he has not been provided an ample opportunity, he shall file case-specific affidavits or other evidence before the status conference.

## IV. Overbreadth.

Defendant argues that the criminal child pornography statutes under which he has been charged – 18 U.S.C. §§ 2252A and 2256 – are overbroad and therefore invalid. He

---

[6]The Government suggests that digital experts could never yield relevant evidence because the Government "does not have to prove that the videos have not been 'altered' or 'modified' or that 'deletions' have not been made." Dkt. #88 at 5. But this assertion does not address the possible efforts of defense experts to create reasonable doubt as to whether the child pornography in question portrays real children.

- 14 -

relies on the Supreme Court's decision in *Ashcroft*, 535 U.S. 234, which held that two provisions of the Child Pornography Protection Act were unconstitutional because of overbreadth. The first, 18 U.S.C. § 2256(8)(B), defined child pornography to include "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in sexually explicit conduct." The second, 18 U.S.C. § 2256(8)(D), defined child pornography as any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" that it represents "a minor engaging in sexually explicit conduct." The Supreme Court found these provisions to be overbroad because they proscribed the viewing of pornography that appeared to be child pornography but that in fact was produced using virtual images or actors over the age of 18. Because the provisions were not limited to obscene material or material produced using actual minors, the Court held that they prohibited constitutionally protected speech – non-obscene pornography produced solely using adults or virtual technology. *Id*. at 240 (citing *Miller v. California*, 413 U.S. 15, 24 (1973); *Ferber*, 458 U.S. at 761)). The Supreme Court acknowledged the legitimate interest in eliminating child pornography, but viewed the ban on material that merely "appears to be" child pornography as a "restriction [that] goes well beyond that interest by restricting the speech available to law-abiding adults." *Id*. at 252-54.

Unlike the provisions in *Ashcroft*, the statutes at issue in this case do not prohibit lawful expression. The statutes impose criminal liability on any person who "knowingly . . . transports," "knowingly receives or distributes," or "knowingly possesses" child pornography. 18 U.S.C. § 2252A(a)(1), (a)(2), (a)(5). "Child pornography" as used in these provisions is expressly limited to pornography produced through "the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). Indeed, the statutes establish an affirmative defense for any pornography that "was not produced using any actual minor or minors." 18 U.S.C. § 2252A(c)(2).

Interpreting a similar child pornography statute, 18 U.S.C. § 2252, the Supreme Court held that the word "knowingly" extends "both to the sexually explicit nature of the material

and to the age of the performers." *X-Citement Video, Inc.*, 513 U.S. at 78. Thus, a defendant could be convicted only if the Government proved beyond a reasonable doubt that the defendant knew the pornography he possessed depicted actual children under the age of 18. *Id.* In the prosecution of Defendant O'Rourke under § 2252A, the Government has agreed that it must satisfy this scienter requirement – it must prove beyond a reasonable doubt that O'Rourke knew the pornography he possessed depicted real children. The Government acknowledged this burden at the November 14 hearing and in a subsequent memorandum. *See* Dkt. #67 at 4. Given the Supreme Court's analysis of a similar statute in *X-Citement Video*, the Court agrees that such scienter must be established. *See* 513 U.S. at 67-79.

Defendant argues that the statutes at issue in this case discourage individuals from engaging in the protected activities of possessing, receiving, and distributing virtual child pornography. This chilling effect arises, Defendant asserts, because technology prevents individuals from knowing if the material they are viewing is real or virtual. Dkt. #72 at 4-5. The Court concludes, however, that the scienter requirement of the statutes eliminates any concern about its overbreadth. A person will be guilty of possessing or distributing child pornography only if it involves an actual child and he knows it does. "Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not[.]" *X-Citement Video, Inc.*, 513 U.S. at 72 n. 3. Unlike the provisions at issues in *Ashcroft*, the statutes under which Defendant has been charged do not prohibit the possession or distribution of virtual or adult-acted pornography.

This conclusion is supported by a decision of the Ninth Circuit. Before reaching the Supreme Court, the *X-Citement Video* case was decided by the Ninth Circuit. The defendant in that case argued that the child pornography statute in question was unconstitutionally overbroad because it prohibited pornography produced with actors under the age of 18 and it is difficult for viewers to tell whether a young adult actor is older or younger than 18. *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1287 (9th Cir. 1992). "The result, according to [the defendant], is that distribution of sexually explicit material becomes such a hazardous profession that its practitioners will refuse to handle materials involving persons

anywhere near the age of 18, thus restricting protected expression involving, for example, 23- or 25-year-olds." *Id.* In response, the Ninth Circuit noted that statutes will be invalidated as overbroad only "'as a last resort'" when the overbreadth has been shown by the defendant to be "'substantial.'" *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)). The Ninth Circuit then concluded that the actor-age uncertainty faced by viewers of pornography was not sufficiently "substantial" to render the statute unconstitutionally overbroad. *Id.* at 1288. Although the Supreme Court later reversed the Ninth Circuit's decision on other grounds, the Supreme Court rejected the defendant's overbreadth claim "for the reasons stated by the Court of Appeals in this case." *X-Citement Video*, 513 U.S. at 78-79.

Just as the Ninth Circuit held in *X-Citement Video* that a statute is not rendered impermissibly overbroad by the difficulty a viewer might have in determining whether an actor is older or younger than 18, this Court holds that the statutes in this case are not invalidated by the difficulty a viewer might have in determining whether a child in a pornographic video is real or virtual. This is particularly true given the fact that a defendant is criminally liable only if he knows the pornography involves a real child.[7]

**V.      Vagueness.**

"A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited." *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1995). A vague statute violates due process because "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926). In the free speech context, a statute is unconstitutionally vague if it fails to set forth ascertainable rules and guidelines to govern its enforcement and therefore could be enforced in a way that treads on legal speech or expression. *See Coates v. City of Cincinnati*,

---

[7]The Supreme Court has also held that even when a statute is facially overbroad both in its language and its lack of a scienter requirement, the overbreadth problem can be solved by a court supplying a narrowing construction and a scienter requirement. A person thereafter may be lawfully convicted if his conduct is illegal under the newer, narrower standard. *See Osborne v. Ohio*, 495 U.S. 103, 111-16 (1990).

402 U.S. 611, 614-15 (1971) (striking down under the First Amendment a city ordinance that made it unlawful for three or more persons to assemble in a public place and conduct themselves in an annoying manner).

Defendant does not deny that the language of the statutes at issue is very clear about the type of conduct prohibited. He instead recasts his overbreadth argument and asserts that the statutes might chill protected activity because a viewer might not know whether an image is real or virtual. But this is not a vague-statute concern. Defendant is not complaining about the precision with which the statutes are drafted, but that consumers may have difficulty applying the clear statutes because they cannot distinguish between real and virtual child pornography. To the extent Defendant thereby suggests that lawful conduct (the viewing of virtual child pornography) might be chilled, the Court again finds the answer in the statutes' scienter requirement. The Government must prove both that the pornography involved a real child and that Defendant knew this fact. Only real child pornography is targeted, and only those who know it is real are guilty of a crime. Such a statutory scheme does not leave men of common intelligence to guess at its meaning. Moreover, Defendant has provided no examples of how the statutes could be enforced with standardless discretion that sweeps in protected conduct.

**VI.   Miscellaneous Motions.**

Defendant has filed several discovery motions relating to the charges the Government plans to file against him and other information about relevant evidence in the case. Dkt. ##41-45. The Government responds generally by arguing that Defendant did not attempt to resolve the discovery disputes before seeking court intervention. Dkt. ##46-50. The Court agrees that Defendant has not attempted to resolve these issues with the Government. Furthermore, the Superseding Indictment filed on November 22, 2006 (Dkt. #80), as well as the additional discovery that has transpired since these motions were filed, may have rendered Defendant's concerns moot. The Court will deny the motions without prejudice to Defendant's filing additional motions if discovery disputes remain after efforts have been made to resolve them.

**IT IS ORDERED:**

1. Defendant's Amended Motions to Dismiss (Dkt. ##70, 71, 72) are **denied**.
2. Defendant's Amended Motion to Compel Discovery (Dkt. #73) is **denied**.
3. Defendant's Amended Motion for Independent Analysis of Physical Evidence and for Protection Order (Dkt. #74) is **denied**.
4. Defendant's discovery motions (Dkt. ##41-45) are **denied.**
5. Defendant's Motion to Strike (Dkt. #92) is **denied**.
6. A routine status hearing will be held on **March 26, 2007, at 1:30 p.m.** The parties should confer before that date regarding any additional access to the hard drive required by defense counsel or experts. Disagreements should be raised with the Court before the status hearing. If Defendant seeks to show that he has not been provided an ample opportunity to examine the hard drive, he shall file case-specific affidavits or other evidence before the status conference.

DATED this 17th day of January, 2007.

David G. Campbell
United States District Judge